**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DDR HENDON NASSAU PARK II LP, ) | CASE NO.  1:08-cv-2535 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| RADIOSHACK CORP., ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendant/Third ) | |
| Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMPUSA, ) | |
| Third Party ) | |
| Defendant ) | |

This matter is before the Court by consent of the parties.  Currently pending before the Court are Plaintiff DDR Hendon Nassau Park II LP's  ("DDR")  Motion for Partial Summary Judgment as to Liability Against RadioShack Corporation (Doc. # 42) and Defendant RadioShack Corporation's ("RadioShack") Motion for Summary Judgment against Plaintiff DDR (Doc. # 47)[1].  For the reasons set forth below, Plaintiff DDR's Motion for Partial Summary Judgment as to Liability Against RadioShack

---

[1]Also pending before the Court are Defendant RadioShack's Motion for Summary Judgment against Third-Party Defendant CompUSA, Inc. ("CompUSA") (Doc. # 46); Third-Party CompUSA's Motion for Summary Judgment as to RadioShack's Third-Party Complaint (Doc. # 44); and CompUSA's Motion to Bifurcate Trial (Doc. # 58).  The Court will not address these Motions herein.

Corporation (Doc. # 42) is DENIED and Defendant RadioShack's Motion for Summary Judgment against Plaintiff DDR (Doc. # 47) is GRANTED.

## I. Procedural Background

On September 18, 2008, Plaintiff DDR filed a Complaint against Defendant RadioShack in Cuyahoga County, Ohio Common Pleas Court (Plaintiff's Complaint attached as Ex. A to Notice of Removal (Doc. #1)).  DDR, as landlord, alleged that RadioShack breached a commercial lease between the parties.  On October 24, 2008, RadioShack filed a Notice of Removal to this Court based on diversity of citizenship between the parties[2].  On March 20, 2009, RadioShack filed a Third-Party Complaint against CompUSA alleging that pursuant to a Stock Purchase Agreement between RadioShack and CompUSA, CompUSA is required to indemnify RadioShack for any loss or expense it incurs in connection with DDR's claim against RadioShack. (Third-Party Complaint (Doc. # 13)).  Thereafter, the parties filed Cross-Motions for Summary Judgment.

## II. Factual Background

On or about October 18, 1995, Hendon Princeton Associates, No. 3, LP[3] and Tandy Corporation n/k/a RadioShack[4] entered into a 15 year lease to rent a portion of a shopping center located in New Jersey.  ("Lease" attached to Complaint as Ex. A)

On or around June 21, 1998, Tandy Corporation entered into a Stock Purchase

---

[2] Plaintiff is a Georgia limited partnership with its principal place of business in Ohio.  Defendant is a Delaware Corporation with its principal place of business in Texas.  (Notice of Removal p.2)

[3] Plaintiff DDR assumed the lease and became the successor in interest to Hendon Princeton Associates, No. 3, LP in 1997.  (Complaint ¶ 4).

[4] In or around May 2000, Tandy Corporation changed its name to RadioShack Corporation.  (Deposition of Mark Hullinger ("Hullinger Dep.") p.17 attached to Defendant's Motion for Summary Judgment against Plaintiff as Ex. A).

Agreement with CompUSA, which was amended and supplemented on August 31, 1998. ("Stock Purchase Agreement" attached to Third-Party Complaint as Ex. A). As part of the Stock Purchase Agreement, Tandy Corporation sold to CompUSA one-hundred percent of the issued and outstanding shares of Series A and Series B Common Stock of Computer City, Inc. ("CCI"), which became a wholly owned subsidiary of CompUSA, and CompUSA subsequently succeeded to all of the assets, title and interest as tenant under the Lease. (Deposition of Brian Zollinger ("Zollinger Dep.") (Doc. # 45) p. 22)

The Lease was assigned to CompUSA as part of the Stock Purchase Agreement. DDR consented to the assignment in a Notice and Consent to Transfer and Assignment on August 30, 1998 signed on behalf of CCI and DDR. ("Notice and Consent" attached to Complaint as Ex B.) Article 12.2(e) of the Lease provides, "in the event of any permitted assignment or subletting, Tenant [Tandy Corporation] shall remain primarily liable and responsible under [the] lease."

In or around May 2007, CompUSA breached the Lease by vacating the leased premises and by failing to pay rent and other charges due under the Lease. (Zollinger Dep. p. 28-29).

As part of CompUSA's wind-down process, Gordon Brothers, a third-party restructuring and asset recovery firm, acquired substantially all of the assets of CompUSA. (Zollinger Dep. p. 39). Thereafter, Gordon Brothers settled creditor claims against CompUSA. (Zollinger Dep. p. 45). To do this, Gordon Brothers facilitated the formation of various creditor committees and a claim administration process similar to those in a bankruptcy proceeding. (Zollinger Dep. p. 45). Creditors participating in the claims process submitted claims in amounts that would be allowable in a bankruptcy proceeding and received a non-negotiable pro rata distribution on their claims in

accordance with the terms of an Assignment of Claims and Distribution of Proceeds Agreement.  ("Assignment of Claims Agreement" attached to Defendants Motion for Summary Judgment as Ex. D; Zollinger Dep. p. 45).

DDR submitted a claim to Gordon Brothers, which was accepted, in the amount of $549,071.17.  (Deposition of Eric Cotton"Cotton Dep." (Doc. #62) p. 72, 81-82).  DDR executed an Assignment of Claim Form in connection with the assigned claim on or about March 31, 2008.  (Assignment of Claim Form attached to Plaintiff's Motion for Summary Judgment as Ex. G). Pursuant to the Assignment of Claim Form, DDR released CompUSA from any further liability under the Lease.  DDR now seeks to recover from RadioShack the remainder of sums owing under the Lease.

### III. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  See Cox v. Kentucky Department of Transportation, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any

4

of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *Id.*, or by any other evidentiary material admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Cathay v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962).  In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.*  However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine "whether the evidence presents a

5

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

### IV. Assignment of Claims

RadioShack argues that pursuant to the Assignment of Claim Form, DDR assigned its claim against RadioShack to Gordon Brothers; and, therefore, DDR is not the real party in interest.  Conversely, DDR argues that the Assignment of Claim Form does not affect its rights against RadioShack.

The Assignment of Claims Form provides in pertinent part:

> [E]ach Accepting Creditor, on behalf of itself and its affiliates, (1) in accordance with the terms of the Agreement **unconditionally and irrevocably transfers and assigns to Gordon Brothers all of such Accepting Creditor's right, title, interest, claims and causes of action in and to, or arising under or in connection with, the Claim,** or any other claim not otherwise transferred under the Agreement, as against the Company or any entity comprising the Company or any of the past or present affiliates, agents, officers, directors, representatives, contractors, attorneys, accountants, or advisors (2) waives and releases all claims (as such term is defined in the Bankruptcy Code) against the Company, the Committees, Gordon Brothers and each affiliate, agent, officer, director, representative, contractor, attorney,  accountant or advisor of the Company, the Committees or Gordon Brothers with respect to the Claim and/or the Company.

(Assignment of Claim Form  p.2).  (Emphasis added.)

DDR attempts to avoid the express terms of this provision by arguing that it had two separate claims for money due under the Lease, one claim against CompUSA and one claim against RadioShack.  This argument is not well taken.  DDR had a single claim for money due under the Lease which it could pursue against two parties.  DDR could not have recovered the full amount due under the lease from both CompUSA and RadioShack.  Significantly, the language does not limit the assignment to claims against

6

CompUSA.  In fact, it expressly assigns to Gordon Brothers all "claims and causes of action in and to, or arising under or in connection with, the claim...."  This is extremely broad language.  As an action against RadioShack involves the same lease and the same premises as DDR's claim against CompUSA, DDR's action against RadioShack arose under or in connection with DDR's claim against CompUSA.  Accordingly, under the express terms of the Assignment of Claim Form, DDR assigned its claim against RadioShack to Gordon Brothers.  As DDR has no further claims under the lease, DDR is not the real party in interest and does not have standing to bring this suit.  *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor."); *Gingold v. State Farm Ins. Co.*, 642 N.Y.S.2d 812 (N.Y.C. Civ. Ct. 1996) (Assignee is real party in interest and he alone can bring suit.); *Craniofacial Pain Management v. New York Central Mutual Fire Ins. Co.*, 718 N.Y.S.2d 130 (N.Y.C. Civ. Ct.  2000) (same)[5].

     Alternatively, DDR argues that it expressly reserved its rights against RadioShack when it assigned its claim against CompUSA to Gordon Brothers.  In support of its argument, DDR points to several contractual provisions.  First, DDR points to page 2 of the Assignment of Claims Form that states, "*provided however*, that the undersigned shall not be deemed to have assigned its rights to receive payments under any credit insurance or other similar third party arrangement."  (Emphasis in original.)

---

[5]The Assignment of Claims Agreement provides that New York law applies.

But, this provision is inapplicable because DDR's claim against RadioShack does not involve credit insurance.  Moreover, insofar as RadioShack maintains primary liability under the Lease, DDR's claim against RadioShack does not arise from a third party arrangement that is similar to credit insurance.

DDR also claims that its intent to reserve its rights against RadioShack is expressed in the contract provisions prohibiting third party beneficiaries, to wit:

> 10.1 This Agreement is binding upon, and has been entered into for the benefit of, the parties hereto and their respective successors and assigns and is not for the benefit of any other Persons.
>
> 10.5 Nothing herein shall create or establish any third-party beneficiary hereto or confer upon any Persons not a party to this Agreement any of the rights or remedies of any kind or nature whatsoever under or by reason of this Agreement, other than the parties and the beneficiaries of the releases set forth herein (and only arising hereunder) and each of their respective successors and assigns.

DDR's argument misses the mark.  The assignment of DDR's claim to Gordon Brothers did not provide RadioShack with any third party benefit because it did not extinguish any of RadioShack's liability.  The assignment merely transferred DDR's right to sue RadioShack to Gordon Brothers.

DDR's reliance of Section 10.4, which requires all waivers to be in writing, is also misplaced because there is no allegation that DDR waived any of its rights under the Agreement.  The critical issue is simply the scope of the assignment.

Finally, DDR attempts to introduce extrinsic evidence to establish that it intended to reserve its claims against RadioShack.  Extrinsic evidence is inadmissable to vary the clear and unambiguous terms of a contract.  *Edwards v. Poulmentis*, 763 N.Y.S.2d 677 (N.Y. Sup. Ct. 2003).  Whether a contract is ambiguous is an issue reserved to the

Court. *Id.* The terms of the Assignment of Claim Form are clear and unambiguous. Under the terms of the assignment, DDR, "unconditionally and irrevocably transfers and assigns to Gordon Brothers all of [DDR's] right, title, interest, claims and causes of action in and to, or arising under or in connection with, the Claim, or any other claim not otherwise transferred under the Agreement." (Assignment of Claim Form p.2). Therefore, DDR is not permitted to introduce extrinsic evidence to vary the terms of the contract. For the foregoing reasons, DDR transferred all claims arising under or in connection with the Lease and, therefore, is not the real party in interest. RadioShack is entitled to summary judgment.

### V.  Lack of Capacity

RadioShack alleges that DDR lacks capacity to maintain this action because it failed to comply with Ohio Rev. Code § 1782.54(A) which provides that: "A foreign limited partnership transacting business in this state may not maintain any action, suit, or proceeding in any court in this state until it has registered with this state." DDR admits that it has not registered with the state. However, DDR maintains that it is not required to register with the state prior to bringing this action because it does not transact business in Ohio. DDR further alleges that even if it were required to register, RadioShack waived its capacity defense by failing to meet the requirements of Fed. R. Civ. P. 9(a)(2).[6] The Court will address the latter issue first.

---

[6] Plaintiff also argues that RadioShack should be precluded from raising this issue because counsel for RadioShack represented to the Court at the June 3, 2009 status conference that RadioShack would not challenge venue. There is no transcription of the status conference, and there is no record or summary of this precise issue. However, the Court's recollection is that while the issue of venue was discussed, the

Fed. R. Civ. P. 9(a)(2) provides in part:

> Pleading Special Matters
> (1) *In General.* Except when required to show that the court has jurisdiction, a pleading need not allege:
>
> (A) a party's capacity to sue or be sued;
>
> (2) *Raising Those Issues.* To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

DDR argues that RadioShack waived the defense of lack of capacity because it failed to raise the defense by specific denial supported by particulars. Neither the law nor the facts support DDR's argument. In paragraph 35 of its Amended Answer, (Doc. # 29) RadioShack avers, "Plaintiff's claims against Defendant are barred by *Plaintiff's lack of capacity* and/or lack of standing and the circuitous action doctrine." (Emphasis added.) Clearly, RadioShack has specifically denied DDR's capacity to bring suit.[7]

Moreover, DDR is incorrect when it argues that RadioShack is required to support this denial with particulars. Unlike Fed. R. Civ. P. 9(b) and 9(c), which require a party to plead with particularity[8], Fed. R. Civ. P. 9(a)(2) requires only that the party raising the

---

issue of capacity was not. This recollection is supported by the fact that the Court issued a briefing schedule regarding the issue of venue, but not capacity. (Doc. # 23). Had the parties specifically highlighted the issue of capacity at the scheduling conference, the Court certainly would have ordered early briefing on this matter as well. It is unfortunate that the issue of capacity was not briefed at an earlier stage in these proceedings. The issues of venue and capacity are not the same, and the Court never understood them to be synonymous.

[7]That the denial is contained in a compound sentence does not diminish the specificity of the denial as DDR suggests.

[8]Fed. R. Civ. P. 9(b) provides in part: "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(c) provides in part: "[W]hen denying that a condition precedent has occurred or been

10

defense of capacity include any supporting facts that are *peculiarly within its knowledge*; these two requirements are not the same.  A fact is peculiarly within a party's knowledge when it is known only to that party.  DDR has not alleged that any of the facts relevant to DDR's status as an unregistered foreign limited partnership were peculiarly within RadioShack's knowledge.  Accordingly, RadioShack has satisfied the requirements of Fed. R. Civ. P. 9(a)(2) and has not waived the defense of lack of capacity.

Turning to the merits of the capacity defense, RadioShack's argument is well taken.  Ohio Rev. Code §1782.49 provides in part:  "[b]efore transacting business in this state, a foreign limited partnership shall register with the secretary of state."  Ohio Rev. Code § 1782.54(A) provides: "A foreign limited partnership transacting business in this state may not maintain any action, suit, or proceeding in any court in this state until it has registered with this state."  DDR does not deny that if it were required to register, it would be prohibited from maintaining this action.  Rather, DDR argues that it is not required to register because it does not transact business in Ohio.  DDR's argument is contrary to its own judicial admissions and the evidence.

In the first paragraph of its Complaint, DDR alleges that, "Landlord [DDR Hendon Nassau Park II LP] is a Georgia limited partnership with its *principal place of business located in Beachwood, Ohio* and is engaged in the business of owning commercial real estate." (Emphasis added).  Now, in apparent contradiction to the allegation that Beachwood, Ohio is DDR's principal place of business, DDR asserts that DDR does not maintain a physical office in Ohio and has not transacted any business in Ohio.  (Cotton

---

performed, a party must do so *with particularity*." (Emphasis added.)

11

Aff. ¶ 3).[9]

Moreover, DDR's characterization of its business activities is, at best, incomplete. DDR alleges that it is a single purpose entity formed for the sole purpose of purchasing and owning Nassau Park Pavilion. (Cotton Aff. ¶ 2). DDR claims it has no employees, does not maintain a physical office in Ohio, and has not transacted any business in Ohio. (Cotton Aff. ¶ 3). However, DDR admits that it hired Developers Diversified Realty Corporation, an Ohio corporation, to perform all related management activities on behalf of Nassau Park Pavilion. (Cotton Aff ¶¶ 4,6 ). Thus, DDR admits that it entered into a contractual agreement with an Ohio corporation to manage DDR's property from Ohio.

The Ohio Supreme Court defined the term "transact" as follows:

> "Transact"...means to *prosecute negotiations*; to carry on business; *to have dealings*...the word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to conclusion....

*Kentucky Oaks Mall v. Mitchell's Formal Wear, Inc.*, 53 Ohio St 3d 73, 75 (1990) (Emphasis in original.) Applying this definition, the Ohio Supreme Court in *Kentucky Oaks Mall,* held that defendant, a Georgia corporation that had entered into a lease with an Ohio corporation to lease property in Kentucky, transacted business in Ohio despite

---

[9]The Court finds it particularly troublesome that plaintiff has filed an affidavit that is inconsistent with the allegations in its Complaint and makes no attempt to reconcile the two statements. Moreover, the affidavit lacks underlying facts to support plaintiff's legal/factual conclusion that it does not transact business in Ohio. For example, plaintiff does not explain the nature and extent of the agreement between plaintiff and Developers Diversified Realty Corporation, nor does it indicate where it negotiated and entered into the contract.

the fact that it had no physical presence in Ohio.  Similarly, in the instant case, DDR transacted business in Ohio when it hired Developers Diversified Realty Corporation, an Ohio Corporation, to manage its property in New Jersey.

Indeed, that DDR transacts business in Ohio is further evidenced by the fact that its general partner, DDR Nassau Park II, Inc., whose address is listed as c/o Developers Diversified Realty Corporation, Beachwood, Ohio, entered into the Assignment of Claim Form on behalf of DDR.

For the foregoing reasons, the Court finds that DDR, whose principal place of business is in Ohio, does transact business in Ohio, and thus is subject to the requirements of Ohio Rev. Code §1782.49.  Accordingly, pursuant to Ohio Rev. Code § 1782.54(A), DDR does not have capacity to maintain this action.[10]

## VI. Conclusion

Based on the foregoing, the Court finds that DDR assigned its claim against RadioShack to Gordon Brothers; and, therefore, DDR cannot maintain this action. Alternatively, the Court finds that DDR lacks capacity to maintain this action. Accordingly, Defendant RadioShack Corporation's Motion for Summary Judgment Against Plaintiff DDR (Doc. # 47) is GRANTED, and Plaintiff DDR Hendon Nassau Park II LP's Motion for Partial Summary Judgment as to Liability Against RadioShack Corporation (Doc. # 42) is DENIED.

**IT IS SO ORDERED.**

---

[10]Having found that DDR is not the real party in interest, and further that it lacks capacity, the Court declines to address any remaining arguments set forth in DDR's Motion for Summary Judgment against RadioShack, or RadioShack's Motion for Summary Judgment against DDR.

                     s/ *Nancy A. Vecchiarelli*
                     NANCY A. VECCHIARELLI
                     UNITED STATES MAGISTRATE JUDGE

Date: February 24, 2010